UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*Let this be filed
Judge CKollar-Kotelly
4/29/2021*

NATHAN M. F. CHARLES,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Civil Action No. 21-864 (CKK)

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO SEAL PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

The Plaintiff respectfully requests the Defendant's SEALED MOTION TO SEAL

PLAINTIFF'S "REPLY" TO DEFENDANT'S MOTION TO DISMISS be denied.  The Motion

is at best a dilatory tactic designed to inconvenience the *pro se* Plaintiff by forcing a Response.

At worst, the Motion is an attempt to cover up the incompetence and misconduct of senior

employees of the U.S. Justice Department's (DOJ) National Security Division (NSD), including

Defendants Julie Edelstein and Jay Bratt.  As the analysis herein shows, any assertions otherwise

are pretext.

**I.**    **RELEVANT FACTS**

1. February 25, 2021, the Plaintiff filed a Complaint in D.C. Superior Court against Jay
   Bratt and Julie Edelstein because they committed the intentional tort of defamation
   against the Plaintiff by fabricating an allegation he had committed misconduct and
   publishing the false allegation to other managerial officials within NSD.  Both
   Defendants acknowledged proper service of the Complaint and Summons in writing.

2.  On or about March 30, 2021, the United States improperly certified that Jay Bratt's and Julie Edelstein's intentional torts were within the scope of their federal employment under the Westfall Act, 28 U.S.C. § 2679(d).

3.  On March 31, 2021, the United States improperly filed a Notice of Removal from the D.C. Superior Court to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1442, 1446.

4.  On April 7, 2021, the United States erroneously assumed that the United States was properly substituted as the defendant and filed a Motion to Dismiss arguing, among other things, that the Complaint had to be dismissed because the Federal Tort Claims Act (FTCA) was the only proper way to bring a suit against the United States, and the FTCA did not waive sovereign immunity for a host of intentional torts including defamation.

5.  On April 16, 2021, the Plaintiff filed a Response (admittedly improperly labeled as a "Reply," to the extent it makes a material difference) arguing, among other things, that the United States was improperly substituted as the defendant for Jay Bratt and Julie Edelstein.  His conclusion was predicated on the fact that their conduct was malicious and intentional, therefore they did not qualify for indemnification under the Westfall Act, and that therefore the original claim against Jay Bratt and Julie Edelstein in their individual capacity was proper.

6.  This Court has yet to rule on either the Defendant's Motion to Dismiss or the Plaintiff's corresponding request for an evidentiary hearing to determine whether the United States was properly substituted as the named defendant.

## II.    LEGAL STANDARD

As the Defendants have stated, "the starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." E.E.O.C. v.

Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996) (internal quotation marks

omitted). "[A] seal may be maintained only if the district court, after considering the relevant

facts and circumstances of the particular case, and after weighing the interests advanced by the

parties in light of the public interest and the duty of the courts, concludes that justice so requires.

In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders, 964 F.3d 1121, 1131

(D.C. Cir. 2020). Considerations that going into that determination include, "(1) the need for

public access to the documents at issue; (2) the extent of previous public access to the

documents; (3) the fact that someone has objected to disclosure, and the identity of that person;

(4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to

those opposing disclosure; and (6) the purposes for which the documents were introduced during

the judicial proceedings."

## III.   ARGUMENT

Almost all the factors listed above weigh in favor of keeping the documents public. The

Defendants' conclusion to the contrary is built on fallacious premises.

### A.   The Defendants' Application of the Leopold Factors is Built upon Several Fallacious Premises.

The flawed premises within the Defendant's Motion must be addressed before the

Leopold factors can be properly analyzed.

#### 1.   The Defendants' Claims that the Plaintiff Violated the Rules of Professional Conduct and Similar Policies are False, Inapposite, and Highly Improper.

The Rules of Professional Conduct for almost every jurisdiction in the Unites States

specifically contemplate the situation in which the Plaintiff finds himself and makes allowances

for it. NSD General Counsel Patrick Findlay states that "disclosure in this context violates long-

standing policy and practice of the Department of Justice and professional responsibility rules

concerning maintaining confidentiality and not disclosing privileged or confidential information.
See, e.g., Justice Manual 1-7.100; D.C. Bar Rules 1 .6(a) and 1.6(c)." ECF Document 7,
"Declaration" of Patrick Findlay, ¶ 5.  In making that claim, he ignores the black-letter
provisions of D.C. Bar Rule 1.6 sitting right next to those which he cites stating:

> A lawyer may use or reveal client confidences or secrets to the extent reasonably
> necessary to establish a defense to a . . . disciplinary charge . . . formally instituted
> against the lawyer, based upon conduct in which the client was involved, or to the
> extent reasonably necessary to respond to specific allegations by the client
> concerning the lawyer's representation of the client.

D.C. Bar Rule 1.6(e)(3).

Moreover, the Plaintiff is not licensed in D.C., but rather Maryland, Pennsylvania, and
Alaska.  He primarily practices in Maryland which gives Attorneys even more leeway than D.C.
by allowing them to disclose previously privileged information "to establish a claim or defense
on behalf of the attorney in a controversy between the attorney and the client." MD Rules
Attorneys, Rule 19-301.6(b)(5).  Pennsylvania's rule is nearly identical to Maryland's, see
Pennsylvania Rule of Professional Conduct 1.6(c)(4), as is Alaska's, see Alaska Rule of
Professional Conduct 1.6(b)(5).

Simply put, any privilege Jay Bratt, Julie Edelstein, or the U.S. Department of Justice
might have enjoyed regarding the Plaintiff's knowledge and communications pertaining to
matters relevant to this case evaporated the moment they accused him of misconduct – doubly so
since the accusation was intentionally false.  Jay Bratt's and Julie Edelstein's defamation directly
resulted in a "a disciplinary charge formally instituted against the lawyer," and had it not, the
defamation still would have constituted a "specific allegation[] by the client concerning the
lawyer's representation of the client."  The Defendants argument to the contrary is refuted by the
plain text of the Rules of Professional Conduct.

4

Attorney Findlay's reference to Justice Manual 1-7.100 is similarly out of place. The Justice Manual is not binding on this Court. Moreover, by its own terms, Justice Manual 1-7.100 only applies "to . . . DOJ personnel, including employees, contractors, detailees, and task force partners." The Plaintiff is no longer a DOJ employee as a direct result of the Defendant's tortious conduct.

### 2.     The Freedom of Information Act (FOIA) has No Bearing on this Case.

Attorney Findlay's "Declaration" implies that information directly relevant to civil litigation should be sealed if it is not disclosable under the Freedom of Information Act. However, he provides no authority stating as much or anything similar. For good reason – none exists. FOIA has nothing to do with civil litigation, the procedures for which are outlined in the Federal Rules for Civil Procedure.

FOIA is a tool to give the public greater access to government files so that the People can exercise a reasonable level of scrutiny over the government formed in their name. It has no application to the admissibility, discoverability, or disclosure of information during civil litigation. In fact, records substantiating all the claims the Plaintiff has outlined in this case thus far are likely to be the subject of valid subpoenas and discovery orders issued under Federal Rules of Civil Procedure 26-37.

### 3.     None of the U.S. Government Employees Involved in this Case Have a Cognizable Privacy Interest over Actions They Took within the Scope of Their Public Duties.

To be clear, the Defendants' tortious conduct, *i.e.* the intentional and malicious publication of false and defamatory statements maligning the Plaintiff, was well outside the legitimate scope of their federal employment. However, the circumstances leading up to that intentionally tortious conduct certainly do involve act supervisors within NSD made within the scope of their professional duties.

5

The Defendants argue that Julie Edelstein has a privacy interest over an act indisputably within the scope of her public duties, namely her involvement in the Hillary Clinton investigation. She does not. The supervisory employees that participated in the disciplinary action which was proximately caused by Jay Bratt's and Julie Edelstein's defamation do not either.

Federal employees do have a privacy interest which ordinarily prevents public disclosure of their names and contact information together in order to avoid the possibility of public harassment. See Milbrand v. United States Dep't of Labor, 17-CV-13237, 2018 WL 3770053 (E.D. Mich. Aug. 9, 2018). However, no such disclosure has been made in this case. In fact, the Defendants earlier complained about the Plaintiff listing Jay Bratt's and Julie Edelstein's office addresses, rather than their home addresses, while erroneously arguing that the Plaintiff intended to sue them in their official capacity. It is contradictory almost to the point of evoking judicial estoppel to now argue that a Response to a Motion should be sealed in order to protect their privacy where only their names were given.

Any right to privacy regarding her public service Julie Edelstein might have enjoyed is diminished by the fact that she was a manager. Federal employees acting in a leadership capacity have a significantly diminished right to privacy. See McMichael v. U.S. Dept. of Def., 910 F. Supp. 2d 47, 53 (D.D.C. 2012). The fact that Julie Edelstein was a "non-SES" employee is irrelevant. McMichael was a Captain in the U.S. Navy, a rank of roughly equivalent privilege and authority to the supervisory GS-15 position Julie Edelstein occupied during the events in question.

Again, FOIA has no application here. However, the Defendants have invoked FOIA because it entails a higher bar to public disclosure than the Federal Rules of Civil Procedure.

Consequently, it bears mention that even FOIA permits the disclosure of a federal employee's identity where such a disclosure is not manifestly an invasion of privacy. "[I]f there is merely a 'speculative' rather than 'substantial probability that disclosure will cause an interference with personal privacy,' then the FOIA compels disclosure." Linn v. U.S. Dept. of Justice, 76 A.F.T.R.2d 95-6334 (D.D.C. Aug. 22, 1995).

The idea that a public employee – especially a supervisory federal prosecutor specifically representing the interests of the People and the Government of the United States – is not subject to public scrutiny for the actions she took in that role strains credulity. The argument is antithetical to the most basic democratic principles. If such an employee cannot take the heat of public scrutiny of his or her official actions, he or she is free to leave the kitchen.

### 4. The Information the Plaintiff Disclosed does not Endanger any Ongoing Investigation.

The Defendants take special exception to the Plaintiff's disclosures in Paragraphs 16, 17, 23, and 36, and later the case briefly mentioned on page 15 of his Response to the Defendants' Motion to Dismiss. Despite the Defendants' borderline histrionics, none of those disclosures have the potential to affect ongoing investigations or cases.

The matter referenced in Paragraphs 16 and 17 has already been highly publicized. Although the Justice Department was remiss in addressing the threat criminally, the conduct at issue resulted in the very public termination of several scientists by the affected institution. The firings were widely covered in the press.

The discussion of the case referenced in Paragraphs 23 and 26 is even less problematic. The investigation resulted in the indictment and arrest of at least one individual. Although the Justice Department was again remiss in properly and aggressively charging it due to unreasonable interference by NSD, the broad outlines of the investigation are already public, and

the case is currently set for trial in October.  The "pending case" Mr. Finlay describes in

Paragraph 9 of his "Declaration" is the same case.  Again, the Plaintiff has revealed nothing in

his Response to the Defendants' Motion to Dismiss that is not already publicly known, except for

the fact that Jay Bratt – for no discernable reason – personally intervened to prevent the U.S.

Attorney from filing the charge most precisely matching the criminal defendant's conduct.

> **5.     The Information the Defendants Wish to Seal is Directly Relevant to
> the Cause of Action.**

Most importantly, each of the disclosures in the Plaintiff's Response is directly relevant

to the cause of action in the Plaintiff's complaint, refuting the Defendant's Motion to Dismiss, or

both.  The Plaintiff sued Jay Bratt and Julie Edelstein in their personal capacities for defamation.

> To state a cause of action for defamation, plaintiff must allege and prove four
> elements: (1) that the defendant made a false and defamatory statement
> concerning the plaintiff; (2) that the defendant published the statement without
> privilege to a third party; **(3) that the defendant's fault in publishing the
> statement amounted to at least negligence**; and (4) either that the statement was
> actionable as a matter of law irrespective of special harm or that its publication
> caused the plaintiff special harm.

Oparaugo v. Watts, 884 A.2d 63, 76 (D.C. 2005)(internal quotation marks omitted; emphasis

added).  The third element speaks to a defendant's intent.  A plaintiff must prove that the

defendant had a *mens rea* amounting to at least negligence or, better still, actual malice.

Therefore, the Plaintiff's Response had to present sufficient facts to show that Jay Bratt

and Julie Edelstein acted with actual malice.  He had to show that Bratt and Edelstein were angry

enough with him to exact revenge by making a false claim about his character and conduct.  He

had to show that Bratt and Edelstein were angry with the Plaintiff for making well-founded

complaints about their legal analysis and their performance in their leadership positions, for

which at least Edelstein was not sufficiently qualified.

8

Moreover, the Defendants specifically predicated their motion to dismiss on the theory that this Court did not have subject matter jurisdiction. They did so on the premises that: (1) the United States was the proper defendant under the Westfall Act; and (2) as a sovereign, the United States had not waived immunity for defamation in the Federal Tort Claims Act.

Therefore, the Plaintiff's Response had to present sufficient facts to show that Jay Bratt and Julie Edelstein in their individual capacities were in fact the proper defendants rather than the United States. He had to show that the indemnification for federal employees outlined in the Westfall Act did not apply. He had to show that Bratt and Edelstein were acting outside the legitimate scope of their duties. He had to show that Bratt and Edelstein were on a frolic of their own. Again, he had to show that Bratt and Edelstein acted with actual malice. Again, he had to show that Bratt and Edelstein were angry enough with him to exact revenge by making a false claim about his character and conduct. Again, he had to show that Bratt and Edelstein were angry with the Plaintiff for making well-founded complaints about their legal analysis and their performance in their leadership positions, for which at least Edelstein was not sufficiently qualified.

All the revelations in the Plaintiff's Response are directly relevant to those factual showings. To force the Plaintiff into a place where he had to make those factual showings, and then complain that he revealed too much, is nothing short of hypocrisy.

Moreover, they are all directly relevant to the elements of the cause of action stated in the Complaint. Because of that, all the revelations in the Plaintiff's Response are facts that will come out at trial anyway.

**B.    Proper Application of the Leopold Factors Shows that the Public's Interest in Access to Judicial Proceedings Vastly Outstrips the Defendant's Feigned Concern for Privacy and Other Considerations.**

Have corrected the Defendants' faulty premises, the <u>Leopold</u> factors can properly be applied to the Motion under consideration.

### 1.    The Need for Public Access to the Documents at Issue

The need for public access to the information at issue is overwhelming.  This is a case in which the Plaintiff, a highly experienced national security professional and attorney, attempted to address critical shortfalls in the operation of the National Security Division of the U.S. Department of Justice related to some of the United States's most pressing matters.  Rather than implement his recommendations, his supervisors disregarded the advice without explanation. When the Plaintiff pressed the issues further in proportion to the significance of the threat, his supervisors retaliated against him for criticizing them as leaders and attorneys.  The public needs to be aware of the mismanagement within NSD even more than the Plaintiff requires individual justice.

### 2.    The Extent of Previous Public Access to the Documents

As discussed more thoroughly above, the information at issue tells the public almost nothing it did not already know about ongoing cases.  It does provide a lot of previously undisclosed details about disfunction within the NSD.  But again, public scrutiny of that information is necessary and in the public interest.

### 3.    The Fact that Someone has Objected to Disclosure, and the Identity of that Person

The Defendants have objected to the disclosure of the information in the Plaintiff's Response.  However, as discussed in detail above, they are doing it for largely fallacious and self-serving reasons.

### 4.    The Strength of Any Property and Privacy Interests Asserted

As discussed above, the revelation that Julie Edelstein was unqualified for her position, yet selected for a managerial position based on her questionable performance during the Hillary Clinton investigation is relevant. It tends to proving the merit of the Plaintiff's critiques of her management and her malice towards him, which provided the motive for her intentionally defaming him. She has no privacy interest in misconduct well exceeding the authority of her official position.

Furthermore, the potential privacy implications of that revelation are merely theoretical. There is no imminent threat to Julie Edelstein's safety or privacy. Moreover, she had a diminished right to privacy over the details of her public duties by virtue of being a high-ranking federal official, a manager, and a federal prosecutor. Her privacy interests are minimal. The United States's privacy interests in the one case and matters barely discussed is minimal because those matters the United States has complained about has closed and the case is already being publicly adjudicated in open court.

### 5.    The Possibility of Prejudice to Those Opposing Disclosure

The Defendants are likely to be prejudiced by the disclosure, but only in their individual capacities and only in a way that is warranted and in the public interest. The nature of the Defendants' Motion to Seal strongly suggests they filed it as a dilatory tactic, an attempt to cover up their individual misconduct, or both. That kind of prejudice is not a legitimate reason for denying the public access to court records. In fact, it is precisely the reason public access to court records is so important in a functioning democracy.

Moreover, the facts revealed are all directly relevant to an element of the cause of action. Each of them is likely to be discussed in far greater detail at trial. Therefore the prejudice the

Defendants are likely to suffer by disclosing that information now is no greater than the prejudice they are likely to suffer later when the same information is revealed at trial.

>    6.    **The Purposes for Which the Documents were Introduced during the Judicial Proceedings**

As discussed in more detail above, the Plaintiff made the revelations in his Response to the Defendants' Motion to Dismiss for legitimate reasons. Specifically, he made them to expound on the elements of his legitimate cause of action and to refute the theory by which the Defendants hoped to have the case dismissed.

## IV.    CONCLUSION

For all the reasons set forth herein, the Defendants' SEALED MOTION TO SEAL PLAINTIFF'S "REPLY" TO DEFENDANT'S MOTION TO DISMISS should be denied. The public's interest in access to court records vastly outstrips the Defendants' interests in privacy over the information disclosed, which is indeed minimal.

Moreover, the context and nature of the Motion suggests it was frivolous: designed to either encumber the resources of the *pro se* Plaintiff in responding or to cover up the misconduct of senior NSD officials and save them the embarrassment of public scrutiny of their official actions. The attorneys for the United States would do well to remember that their job is not necessarily to win, but to do the right thing.

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is **not that it shall win a case, but that justice shall be done.** As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or **innocence suffer.** He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. **It is as much his duty to refrain from improper methods** calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

12

Berger v. United States, 295 U.S. 78, 88 (1935).  This is not a criminal case, but the sentiment still applies.

The United States has an obligation to do justice, not merely defeat the Plaintiff's suit because it is inconvenient or injures the egos of some of the attorneys involved.  "Justice" should take the form of compensating the Plaintiff for his damages.  However – even more importantly – it should take the form of exposing the gross mismanagement and incompetence within NSD to public scrutiny and thereafter reforming the agency so it can better serve the interests of the People

Dated: April 26, 2021                              Respectfully submitted,

NATHAN M. F. CHARLES, Esq.
*Pro se*
11313 Gainsborough Road
Potomac, MD 20854

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATHAN M. F. CHARLES,

    Plaintiff,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Civil Action No. 21-864 (CKK)

## **ORDER**

    The Motion to Seal Plaintiff's Response to the Defendants' Motion to Dismiss is hereby

DENIED.  So ordered.

_____
Date

_____
Colleen Kollar-Kotelly,
United States District Judge