**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATHAN M.F. CHARLES,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Civil Action No. 21-0864 (CKK) |

**MEMORANDUM OPINION**
(April 7, 2022)

This matter comes before the Court on Plaintiff's [31] Motion for Reconsideration.

Plaintiff moves the Court, pursuant to Federal Rule of Civil Procedure 60(b), to vacate its [30]

Memorandum Opinion and Order dismissing this case for lack of jurisdiction.  Insofar as

Plaintiff clarifies his defamation claim to center on alleged conduct the Court did not analyze in

its [30] Memorandum Opinion and Order granting Defendant's [3] Motion to Dismiss, the Court

will exercise its discretion to revisit its [30] Memorandum Opinion and Order and reanalyze

dismissal on Plaintiff's proposed basis.  Even doing so, however, the Court concludes it still

lacks jurisdiction over this case.  Accordingly, upon consideration of the pleadings,[1] the relevant

---

[1]  This Memorandum Opinion focuses on the following documents:
- Plaintiff's Complaint, ECF No. 1-1 ("Compl.");
- Plaintiff's sealed Reply to Defendant's Motion to Dismiss, ECF No. 6 ("Pl.'s Opp.");
- Plaintiff's proposed Amended Compaint, ECF No. 19-1 ("Am. Compl.');
- Plaintiff's Motion for Reconsideration, ECF No. 29 ("Mot.");
- Defendant's Opposition to Plaintiff's Motion for Reconsideration, ECF No. 32 ("Def.'s Opp."); and
- Plaintiff's Reply to Opposition to Motion for Reconsideration, ECF No. 33 ("Pl.'s Repl.").

In an exercise of its discretion, the Court finds that holding oral argument in this action
would not be of assistance in rendering a decision.  *See* LCvR 7(f).

legal authorities, and the entire record, the Court shall **DENY** Plaintiff's [31] Motion for Reconsideration.

## I.   BACKGROUND

Before turning to the circumstances underlying Plaintiff's most recent Motion, the Court shall pause to repeat some of the general background in this case.  On February 25, 2021, Plaintiff, previously employed as an attorney at the National Security Division ("NSD") of the United States Department of Justice, filed a complaint for defamation against two of his coworkers in the District of Columbia Superior Court.  Notice of Removal at ¶ 2.  Plaintiff's operative complaint is threadbare; it characterizes his coworkers' statements as "false" and made to "Plaintiff's direct supervisor and other managerial officials of [NSD]."  Compl. at ¶¶ 3-4.  The complaint's only other factual allegation is that, "[a]s a result of [his coworkers'] publication of these defamatory statements, [] Plaintiff was suspended from his position as a federal prosecutor," resulting in lost wages.  *See id.* at ¶ 5.  On March 31, 2021, Defendant filed their notice of removal, arguing that it was the true party in action as Plaintiff's former coworkers were acting in their official capacity when they uttered the allegedly defamatory statements.  *Id.* at ¶ 5.

A week after removal, Defendant filed its motion to dismiss for lack of subject matter jurisdiction.  In support thereof, Defendant argued:  (1) the Court did not have derivative jurisdiction because federal courts have exclusive jurisdiction over claims arising under the FTCA; (2) contrarily, Plaintiff cannot bring an FTCA claim because the FTCA does not waive sovereign immunity for intentional torts; and (3) Plaintiff had yet to effect proper service.

It was not until Plaintiff's opposition[2] that Plaintiff offered some factual development in

---

[2]  Upon Defendant's motion, the Court sealed Plaintiff's opposition as, Defendant represented, Plaintiff revealed the existence of sensitive, ongoing national security investigations.  Order at 1,

response to Defendant's jurisdictional arguments.  Broadly, Plaintiff's conflict with his

coworkers seems to have begun when, Plaintiff alleges, they ignored concerns he raised about

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████  Pl.'s

Opp. at 4-6.  In its [30] Memorandum Opinion and Order, the Court focused on Plaintiff's

allegation that he submitted a draft report on the subject to his supervisor, that she directed him

not to share the draft outside of the Department of Justice, and when he did, she reported his

actions to upper management within NSD.  *Charles v. United States*, 2022 WL 558181 at *2.

The Court focused on that fact mainly because neither Plaintiff's complaint nor proposed

amended complaint identified *what* false statement gave rise to his defamation claim (and his

proposed claim for intentional infliction of emotional distress).  *See id.*  Indeed, both Plaintiff's

original complaint and proposed amended complaint had very few factual allegations, while

Plaintiff's 73-page opposition, as Plaintiff writes in the instant Motion, "was particularly

lengthy," "included a variety of minimally relevant details of the case," and some of which "was

mere plot exposition—perhaps even 'surplusage.'"  Mot. at 3.

Considering mainly Plaintiff's failure to follow his supervisor's instructions not to share

the draft memorandum, the Court concluded that a superior charging Plaintiff with failure to

follow instructions was an "action[] 'of the kind [they] [were] employed to perform.'"  *Charles*,

2022 WL 558181 at *4 (quoting *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659,

664 (D.C. Cir. 2006)). As a result, the Court held that Plaintiff's complaint fell within the ambit

of the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ("FTCA") and dismissed Plaintiff's

complaint because the defamation claim, as the Court understood it to be pled, did not fall within

---

ECF No. 28 (Feb. 22, 2022).  The Court has redacted the same detail here that it redacted in its
[30] Memorandum Order and Opinion.

the federal government's waiver of sovereign immunity.  *Id.* at \*5.  Additionally, the Court

denied Plaintiff leave to amend his complaint to add a claim for intentional infliction of

emotional district because, as the Court understood it to be pled, the proposed amended

complaint failed to state such a claim.  *Id.* at \*5.

Plaintiff's present Motion insists that the Court focused on the wrong allegations laid out

in his [6] Reply to Defendant's Motion to Dismiss (which, again, were included in neither his

original complaint nor proposed amended complaint).  In the present Motion, Plaintiff includes a

chart—reproduced almost verbatim below—delineating which allegations on which Plaintiff

would have had the Court's analysis focus.[3]

| Date | Event | Significance | Citation to the Record of this Case |
|---|---|---|---|
| August 20-September 16, 2019 | The Plaintiff authors the aforementioned "draft memo" | [No entry] | ECF No. 6, ¶¶ 7-8, 20-23 |
| September 16, 2019 | Julie Edelstein instructs the Plaintiff not to distribute the "draft memo" outside of his immediate office | [No entry] | ECF No. 6, ¶ 24 |
| September 18, 2019 | The Plaintiff distributes the "draft memo" outside of his immediate office. | The Plaintiff has never disputed that he disobeyed Julie Edelstein's instructions in this situation.  He thought he was justified based on the circumstances.  However, his supervisors later counseled him otherwise, the Plaintiff never did it again. | ECF No. 6, ¶¶ 25-27. |

---

[3]  Some cells in the chart are empty of content.  The Court has added "[No entry]" in a cell that
Plaintiff left empty.

| October 1, 2019, at 4:30 PM EDT | Jay Bratt, Julie Edelstein, and the Plaintiff's direct supervisor (hereinafter "Direct Supervisor" counsel the Plaintiff that it was inappropriate to send a draft memo outside of his immediate office after being told not to, and that his perceived justification for doing so was insufficient. The counseling session ended with a discussion of several other issues in the office, none of which pertained to substantive legal issues. | [No entry] | [No entry] |
| October 3, 2019 | Direct Supervisor sends the Plaintiff an email to memorialize the counseling session on October 1, 2019.  The email included the statement, "We consider constructive conversations, like the one we had on Tuesday, to be the appropriate method to handle confusion, disagreements, and frustration, that we all inevitably experience as we work together to advance CES's [a sub-office within NSD] mission. | The statement from this email, "We consider constructive conversations, like the one we had on Tuesday, to be the appropriate method to handle confusion, disagreements, and frustration, that we all inevitably experience as we work together to advance CES's mission," is the "instruction" Jay Bratt and Julie Edelstein would later claim was an instruction not to question Julie's legal analysis. | ECF No. 6 ¶ 35. |
| February 19, 2020 | The Plaintiff | Edelstein's legal | [No entry] |

| | | | |
|---|---|---|---|
| | highlighted some text in a draft search warrant affidavit and added to the margin comment, "NMC, 02/19/20: Per Julie's orders, this has to come out.  I vehemently disagree with her.  I event went so far as to raise the issue with two Deputy Assistant Attorneys General.  However, I was ultimately overruled." | reasoning – is the act that Julie Edelstein and Jay Bratt stated violated their instructions to the Plaintiff on October 1-3, 2019. | |
| March 30, 2020 | Direct Supervisor Issued the Plaintiff a Notice of Proposed Suspension.  The charge in the notice was "Failure to Follow Instructions" the Notice claimed that the Plaintiff had been instructed to "refrain from challenging Deputy Chief Edelstein's litigation and strategy-related decisions in communications outside of the Counterintelligence and Export Control's (CES) management chain." | At no point had anyone issued the Plaintiff an order to "refrain from challenging Deputy Chief Edelstein's litigation and strategy-related decisions in communications outside of the Counterintelligence and Export Control Section's (CES) management chain" or anything like it.  Nor did the Notice contain any details on when or by what manner anyone might have issued the Plaintiff such an instruction. | ECF No. 23 ¶¶ 52-57. |

Mot. at 7-9.  Based on Plaintiff's chart, and as far as the Court can tell, it appears that Plaintiff

offers the following allegation as the actionable conduct at issue (i.e., as the false statement(s)

that Plaintiff "failed to follow instructions"):  Plaintiff inserted a critical comment on a draft

document; both Edelstein and Bratt falsely claimed to an unnamed supervisor that either Bratt,

Edelstein, or both had instructed him not to do so; and that false statement caused Plaintiff's

separation from the Department of Justice. Plaintiff further alleges in the instant Motion that the

alleged statements "were felony violations of 18 U.S.C. § 1001 because they were misstatements

made in the course of an official proceeding before the Executive Branch of the United States

Government." Mot. at 4.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 60(b), a district court may "relieve a party or

its legal representative from a final judgment, order, or proceeding" on one of six grounds: (1)

mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud;

(4) that the judgment is void; (5) applying the judgment prospectively is no longer equitable; or

(6) any other reason that justifies relief. The party seeking relief under Rule 60(b) bears the

burden of showing that they are entitled to the relief sought, and the decision to grant such a

motion "'is committed to the discretion of the District Court.'" *United States v. Dynamic

Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017). Motions for reconsideration are generally

"disfavored" and granting them are an "unusual measure." *Walsh v. Hagee*, 10 F. Supp. 3d 15,

18 (D.D.C. 2013). Indeed, a Rule 60(b) motion may only be granted if the movant can establish

upon vacatur, "some prospect of proceeding on the merits." *Thomas v. Holder*, 750 F.3d 899,

903 (D.C. Cir. 2014).

## III.   DISCUSSION

### A. Pleading

Before moving to the merits, a word on the law of pleading and the Court's original

approach to this case is in order. A complaint must give a defendant "fair notice of the basis for

petitioner's claims." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).  As the Supreme

Court has explained, "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation

of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 678 (2009)).

More specific to this case, under District of Columbia law, defamation must be pled with

particularity. *Vreven v. Am. Ass'n of Retired Persons*, 604 F. Supp. 2d 9, 15 (D.D.C. 2009).  That

means, in practice, that a plaintiff must "'allege specific defamatory comments . . . by pleading

the time, place, content, speaker, and listener of the alleged defamatory matter.'"  *Von Kahl v.*

*Bureau of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 217 (D.D.C. 2013) (quoting *Caudle v.*

*Thomason*, 942 F. Supp. 635, 638 (D.D.C. 1986)).

       As the Court noted in its [30] Memorandum Opinion and Order, Plaintiff's operative

complaint veered closer to a case of what "will not do."  *See Charles*, 2022 WL 558181 at *1.

Plaintiff's operative complaint stated, in one paragraph, that Edelstein and Bratt "published

statements to the Plaintiff's direct supervisor and other managerial officials of the National

Security Division of the U.S. Department of Justice claiming the Plaintiff had failed to follow

instructions."  ECF 1-1 at 13.  As a result, it was nigh impossible for the Court to discern, from

the face of the complaint, *what* statement alleged that Plaintiff failed to follow *which* instruction,

not to mention the identity of the other individuals to whom Bratt and/or Edelstein uttered these

mysterious statements.  However, because Defendant moved to dismiss the complaint for lack of

jurisdiction, and not failure to state a claim, it was within the Court's discretion to move beyond

the complaint's "four corners" and "consider the complaint supplemented by undisputed facts

evidenced in the record."  *Compare Coal. for Underground Expansion v. Mineta*, 333 F.3d 193,

198 (D.C. Cir. 2003) (citations omitted) (Rule 12(b)(1) motion) *with Hamilton v. United States*, 502 F. Supp. 3d 266, 273 (D.D.C. 2020) (court limited to "four corners of the complaint" and attachments in 12(b)(6) motion).

So, the Court moved to Plaintiff's prolix 73-page opposition to determine what Plaintiff considered to be the actionable conduct at issue. The Court also did so in light of "Plaintiff's pro se status." *See Charles*, 2022 WL 558181 at *4. Plaintiff seems to think that even mentioning that Plaintiff has proceeded pro se cut against him. *See* Mot. at 9-10. Quite the opposite. Any "document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007),[4] and the Court attempted to construe all of Plaintiff's filings as broadly and liberally as possible. *See also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (court "may consider supplemental material filed by a *pro se* litigant in order to clarify the precise claims being urged"). Even doing so, the opposition itself did not make clear what conduct Plaintiff considered actionable for defamation. Of the paragraphs that Plaintiff now states constitute his defamation claim, none of them characterizes the factual allegations as those underpinning the complaint's defamation claim. Indeed, the only new characterization of Plaintiff's defamation claim came in paragraph 66, in which Plaintiff wrote that his "Complaint highlighted that Jay Bratt and Julie Edelstein made materially false statements when they claimed they issued the Plaintiff an unambiguous set of instructions and the Plaintiff disobeyed them." The opposition

---

[4] In *Erickson*, the Supreme Court continued that sentence to say, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings *drafted by lawyers*." 551 U.S. at 94 (emphasis added) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Plaintiff is, of course, a lawyer. The law in this Circuit is less settled as to whether, and to what degree, a pro se attorney's filings should be construed liberally. Nevertheless, given Plaintiff's practice appears to have been entirely prosecutorial, the Court shall extend him the same deference as it would any other *pro se* litigant. *See Cooper v. Farmers New Century Ins. Co.*, 667 F. Supp. 2d 175, 179 (D.D.C. 2009) (CKK) (Court "construe[d] the plaintiff's filings liberally" even though pro se plaintiff was "an attorney representing himself").

was entirely silent as to which of the factual allegations were those "materially false statements."

Nevertheless, and in light of Plaintiff's pro se status, the Court shall exercise its discretion to

reconsider its [30] Memorandum Opinion & Order and construe the operative complaint and

proposed amended complaint as Plaintiff asks.

### B.  Merits

#### 1.  Scope of Employment

As the parties agree, the crux of this case is and has always been whether Bratt and

Edelstein were acting within the course of their employment when they uttered the alleged

defamatory statements.  *Compare* Mot. at 10 *with* Def.'s Opp. at 2-3.  If they were, Plaintiff's

defamation claim (and proposed claim for intentional infliction for emotional distress) are barred

under the Federal Tort Claims Act both for failure to exhaust administrative remedies and for the

statutory refusal to waive sovereign immunity for such claims. *See Charles*, 2022 WL 558181 at

*4. If Bratt and Edelstein were *not* acting within the course of their employment, however, the

United States is not the proper defendant in action and the Court, at present time, lacks removal

jurisdiction over this case.  *See Charles*, 2022 WL 558181 at *3.

Turning to that question, the Westfall Act, 28 U.S.C. § 2679, governs when a federal

official is immunized from state tort liability for that official's purportedly tortious act.  In

relevant part, the Act provides:

> Upon certification by the Attorney General that the defendant was acting within the scope
> of his office or employment at the time of the incident out of which the claim arose, any
> civil action or proceeding commenced upon such a claim in a United States district court
> shall be deemed an action against the United States under the provisions of this title and
> all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).[5]  Although the Attorney General's declaration that an official was acting

---

[5]  As the Court explained in the last Memorandum Opinion and Order, a Westfall Declaration
filed in state court necessarily removes the action to federal court as the federal court has original

in the course of their employment is not "conclusive," it does "constitute *prima facie* evidence

the employee was [in fact] acting within the scope of [their] employment." *Council of Am.*

*Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006).  As such, the Act establishes

an evidentiary question that a defendant must contest by "coming forward with specific facts

rebutting the certification."  *See Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003).  As

Plaintiff notes, relying on *Stokes*, sometimes an evidentiary hearing is necessary to determine

whether the official was acting within the scope of their employment.  *See id.* at 1216.  Usually,

however, it is more appropriate for the Court to decide the question on the papers.  *See Wuterich*

*v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009)*.* [6]

In either case, the question is governed by the law of *respondeat superior* in the state in

which the alleged tort occurred—here, the District of Columbia.  *Wilson v. Libby*, 535 F.3d 697,

711 (D.C. Cir. 2008).  The District of Columbia follows the Second Restatement of Agency in

delineating scope of employment:

>   (1) Conduct of a servant is within the scope of employment if, but only if:
>
>>   (a) it is of the kind he is employed to perform;
>>
>>   (b) it occurs substantially within the authorized time and space limits;
>>
>>   (c) it is actuated, at least in part, by a purpose to serve the master; and
>>
>>   (d) if force is intentionally used by the servant against the other, the use of force is not unexpectable by the master.
>
>   (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

---

jurisdiction over the matter.  *Charles*, 2022 WL 558181 at *1.

[6]  *Accord Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002); *Davric Maine Corp. v. USPS*, 238 F.3d 58, 67 (1st Cir. 2001).

*Schechter v. Merchants Home Delivery, Inc.*, 892 A.2d 415, 427-28 (D.C. 2006).  "Although scope of employment is generally a question for the jury, it 'becomes a question of law for the court, however, if there is not sufficient evidence from which a reasonable juror could conclude that the action was within the scope of employment.'"  *District of Columbia v. Bamidele*, 103 A.3d 516, 525 (D.C. 2014) (Fisher, J.) (quoting *Weinberg v. Johnson*, 518 A.2d 985, 991 (D.C. 1986)).  "'However, if the employee acts in part to serve his employer's interest, the employer will be held liable for the intentional torts of his employee even if prompted partially by personal motives, such as revenge.'"  *Id.* (quoting *Hechinger Co. v. Johnson*, 761 A.2d 15, 24 (D.C. 2000).

In its February 26, 2022 Minute Order, the Court asked the parties to address whether and to what degree Plaintiff's classification of Bratt and Edelstein's conduct as "felonious" affected the scope-of-employment analysis.  Essentially, whether an employee's activity was criminal is probative, but not determinative, of whether their conduct was within the scope of their employment.  *See Harbury v. Hayden*, 522 F.3d 413, 422 (D.C. Cir. 2008) ("seriously criminal and violent conduct can still fall within the scope of a defendant's employment under D.C. law").  The key question is not whether conduct was criminal, but whether it fits within the strictures of Second Restatement of Agency.  *See, e.g.*, *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee acted within scope of employment in shooting customer during dispute over removing clothes from washing machine).

Plaintiff relies mainly on *Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003).  In that case, an officer of the Uniform Police Branch of the United States Government Printing Office claimed that his coworkers defamed him by alleging that he failed to provide "necessary assistance in dealing with [a] trespasser."  *Id.* at 1212.  He further alleged that his co-workers

12

"destroyed and ignored critical [and exonerating] evidence" and also "threatened [another officer's] career and livelihood if he did not make a statement adverse" to the plaintiff. *Id.*  The Court concluded that an evidentiary hearing was necessary to determine whether "destroying critical evidence, preparing and submitting false affidavits *by use of threat and coercion*, and engaging in other criminal acts" acted within the scope of their employment. *Id.* at 1216 (emphasis added).  In other words, the Court of Appeals reversed mainly for the district court's failure to properly determine whether the conduct alleged fell within the employees' scope of employment when the district court instead summarily treated the government's Westfall Declaration as determinative. *See id.*  So, on remand, the district court considered the question and concluded that "destroying critical evidence, preparing and submitting false affidavits by use of threat and coercion, and engaging in other [unnamed] criminal acts" were, in fact, within the scope of the police officers' employment. *See Stokes v. Cross*, 2005 WL 79036 (D.C. Cir. Jan. 13, 2005).  The Court of Appeals then summarily affirmed that conclusion in an unpublished opinion. *Id.*

In any event, Plaintiff's allegations are quite distinct from those in *Stokes*.  Plaintiff alleges no threats or coercion nor any destruction of evidence.  Rather, Plaintiff alleges that Bratt and Edelstein falsely stated that Plaintiff's addition of critical comments in a draft search warrant constituted "failure to follow [prior] instructions" not to do so.  In that regard, this case is much more akin to *Jacobs v. Vrobel*, 724 F.3d 217 (D.C. Cir. 2013).  In that case, an employee of the General Services Administration sued her supervisor for defamation by falsely "criticiz[ing] her work abilities when a potential employer calls for a reference." *Id.* at 219 (cleaned up).  The court held that the references, even if false, fell within the natural job responsibilities of a manager and that they were "actuated, at least in part, by a purpose to serve the master." *See id.*

13

at 222.

Turning, then, to the Restatement's factors, the Court finds that the alleged defamatory statements are "of the kind that [Bratt and Edelstein] [were] employed to perform."  "Courts routinely find that a federal employee's statements made during the course of government investigations fall within the scope of that employee's duties, even when the statements are alleged to be false or defamatory."  *Minnick v. Carlile*, 946 F. Supp. 2d 128, 132 (D.D.C. 2013); *see also Hosey v. Jacobik*, 966 F. Supp. 12, 14-15 (D.D.C. 1997) (finding that federal employee's allegedly defamatory statements during a government security clearance investigation were made within the scope of employment).  Plaintiff offers no authority to the contrary, and it strikes the Court as axiomatic that the review of an employee's work is part of a supervisor's job.

Second, Plaintiff does not appear to contest that the allegedly defamatory statements were made "substantially within the authorized time and space limits."  Construing Plaintiff's filings liberally, it appears that Bratt and Edelstein made their statements while within the Department of Justice and during working hours.

As to the third and final factor, the Court of Appeals has made clear that "even a *partial* desire to serve the master" is sufficient to satisfy this prong.  *Ballenger*, 44 F.3d at 664.  Even drawing all inferences in Plaintiff's favor, Plaintiff's filings establish that no reasonable jury could find either Bratt or Edelstein uttered the allegedly defamatory statements *solely* for selfish purposes.  Each and every instance of friction between Plaintiff and Bratt and/or Edelstein involved aspects of Plaintiff's work that Bratt and/or Edelstein thought deficient or improper. *See, e.g.*, Pl.'s Opp. at ¶ 27 (email sent outside NSD); ¶ 30 (Bratt thought Plaintiff's characterization of Edelstein's management as being "kept in the dark and fed a steady die[t] of

garbage" "unprofessional"); ¶ 47 (Edelstein thought Plaintiff's edits to search warrant affidavit

deficient).  Plaintiff's own filings establish that *a* motivation, if not *the* motivation, for Bratt and

Edelstein's allegedly defamatory statements were to incur an adverse employment action of

some sort against Plaintiff for what they evidently viewed as bad work.  Whether Plaintiff's work

was *in fact* poor, and whether Bratt and/or Edelstein committed a tortious or felonious action to

accomplish that end, the motivation was nevertheless to serve their master, the United States

Department of Justice.  *See Kelley v. FBI*, 67 F. Supp. 3d 240, 286-87 (D.D.C. 2014) (subjective

ends, not objective means, is relevant inquiry for third agency factor).  Like the employment

references in *Jacobs*, the pleadings demonstrate that the allegedly defamatory statements served,

at least in part, a workplace purpose.  Moreover, like for the first factor, Plaintiff offers no

authority supporting a different finding.

> 2.  Jurisdiction

As the Court explained in its [30] Memorandum Opinion and Order, having concluded

that Plaintiff has not carried his burden to show that Bratt and Edelstein were not acting within

the course of their employment, the rest of Plaintiff's case falls.  As the FTCA waives immunity

only for non-intentional torts, Plaintiff cannot maintain either a defamation claim or a claim for

intentional infliction of emotional distress against the United States.[7]  *See Jackson v. United

States*, 857 F. Supp. 2d 158, 161 (D.D.C. 2012) (defamation); *Koch v. United States*, 209 F.

Supp. 2d 89, 94 (D.D.C. 2002) (intentional infliction of emotional distress).  Even if the FTCA

did waive immunity for these torts, the Court would not have subject matter jurisdiction because

---

[7]  Ultimately, Plaintiff's proposed claim for intentional infliction of emotional distress is no
longer an issue in this case because Plaintiff has not in the instant Motion asked the Court to
reconsider its holding that his proposed amended complaint failed to state a claim for intentional
infliction of emotional distress.  *Charles*, 2022 WL 558181 (citing *Kassem v. Wash. Hosp. Ctr.*,
513 F.3d 251, 255 (D.C. Cir. 2008).

Plaintiff has not, as he appears to concede, exhausted his administrative remedies. *See Totten v. Norton*, 421 F. Supp. 2d 115, 122 (D.D.C. 2006); 28 U.S.C. § 2675(a). Accordingly, as Plaintiff has failed to show Bratt and Edelstein were not acting within the course of their employment when they uttered the allegedly defamatory statements, the Court must deny Plaintiff's request for reconsideration dismissing this case for lack of jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court has concluded that Plaintiff's [31] Motion for Reconsideration should be **DENIED**. Given Plaintiff's insistence that he has only "br[ought] this case . . . to clear his name, get his job back, and obtain a modicum of vindication over the way the Justice Department's National Security Division was led and managed during his tenure," Mot. at 10 n.4, the Court shall stress what it has held. The Court has held *only* that, per Plaintiff's allegations, Bratt and Edelstein acted within the course of their employment when they uttered the allegedly tortious statements, and that, as such, the Federal Tort Claims Act removes Plaintiff's claims from the Court's jurisdiction. It has not passed judgment on any other aspect of Plaintiff's case or allegations.

An appropriate order accompanies this memorandum opinion.

Dated: April 7, 2022

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge